**486** B'way-94th St. Realty Co., Inc., *v.* C. & L. L. Co., Inc.

Appellate Term, First Department, November, 1922.   [Vol. 119

Broadway-94th Street Realty Co., Inc., Landlord, Appellant,
*v.* C. & L. Lunch Co., Inc., Tenant, Respondent.

Supreme Court, Appellate Term, First Department, January Term — Filed
November, 1922.

Landlord and tenant — assignment of lease by tenant — non-payment
of rent — summary proceedings — counterclaim for breach of cove-
nants in lease — when verdict thereon in tenant's favor unwarranted.

The assignment of a ten-year lease of premises in the city of New York or their
underletting was prohibited except that upon completing the fitting up and
furnishing of the premises as a first-class restaurant, the tenant was permitted
to assign the lease to a reputable person, financially responsible and of good
repute, and upon payment to the landlord of the equivalent of two months'
rent in cash as security for the full and faithful performance by the tenant
of the terms of the agreement. After the premises had been fitted up for
restaurant purposes and three years after the execution of the lease the tenant
for a valuable consideration assigned its entire interest in the lease and gave
the assignees a bill of sale of the personal property contained in the premises.
Prior to the making of the assignment and bill of sale the landlord on request
of the tenant had refused to consent to the assignment of the lease to three
different prospective purchasers and did not see the assignees or have any
communication with them until after the assignment had been made. The
assignees immediately went into actual possession and tendered two months'
rent as security to the landlord which it refused to accept as well as the rent
tendered, and after notice to the assignees that it would use every possible
means to deprive them of the possession of the premises interfered with the quiet
possession thereof by threats to cut off light, heat and water. The assignees
under an oral agreement received back their purchase money and reassigned
the lease to the tenant. In a summary proceeding for non-payment of rent the
tenant set up a counterclaim for damages alleged to have been sustained through
the landlord's alleged breach of covenants. The jury assessed the tenant's dam-
ages, pleaded as a counterclaim, at a certain sum, and deducting therefrom the
amount conceded to be due to the landlord, arrived at a verdict in favor of the
tenant for the difference. Upon reversing the judgment entered upon the
verdict, *held*, that the tenant had no cause of action against the landlord upon
the counterclaim and a motion made by counsel for the landlord at the close
of the case to set aside the verdict and for a new trial should have been granted
as well as a motion to dismiss the counterclaim upon the merits.

An oral agreement made at the time of the assignment and bill of sale by the
terms of which the assignees of the lease were at liberty to demand and receive
back the purchase price at any time if their tenancy was disturbed or if the
landlord would not accept them as assignees, did not operate to make the
assignment, which was absolute, a conditional transfer; the landlord could
not be held accountable for the kind of a contract its tenant might choose to
make with another person.

Appeal by the landlord from judgment entered upon a verdict
in favor of tenant, and from orders denying motion to set aside
the verdict and for a new trial in the Municipal Court of the city
of New York, borough of Manhattan, fifth district.

*Joseph A. Seidman (Frank C. Laughlin,* of counsel), for appellant.

*Abraham P. Wilkes (Joseph I. Green,* of counsel), for respondent.

LYDON, J. This is a summary proceeding instituted by the landlord to recover possession of certain demised premises in the borough of Manhattan, city of New York, for non-payment of rent. The amount of unpaid rent and water charges and interest, to wit, $8,954.81, was conceded to be due. The defendant, however, answered setting up a counterclaim for damages sustained through the landlord's alleged breach of one or more covenants of the lease. The trial was had before the court and a jury, and the jury assessed the tenant's damages at $16,000 and deducted therefrom the amount due the landlord and arrived at a verdict in favor of the tenant in the sum of $7,045.19. A motion was then made to set the verdict aside and for a new trial on all of the grounds mentioned in section 999 of the Code of Civil Procedure, and on the ground that it was contrary to law and that the damages were excessive, and on the exceptions taken during the trial.

At the close of the trial the landlord moved for a final order and for the dismissal of the setoff and counterclaim of the tenant, which motion was denied and an exception duly taken.

It appears that there were two leases made and entered into between the landlord and tenant; the first lease is dated October 1, 1917, and covers the northerly store adjoining the corner store in the building known as No. 2524 Broadway, in the borough of Manhattan, city of New York, and was to run for a period of ten years from October 1, 1917, at an annual rental of $8,000. On June 1, 1918, the landlord and tenant entered into an additional lease which covered the corner store of said building, which was to be used only as an addition to the store previously rented, and all the terms, covenants and conditions in the prior lease between the parties were to be deemed a part and parcel of the said second lease. In paragraph " V " of the first lease the tenant was prohibited from assigning the lease or underletting the premises except under certain conditions, to wit, upon the tenant completing the fitting up and furnishing of the premises as a first-class restaurant, and after that was done he was permitted to assign the lease to a reputable person, financially responsible and of good repute, and upon payment to the landlord of the equivalent of two months' rent in cash as security for the full and faithful performance by the tenant of the terms of the agreement. After the tenant fitted up the premises for restaurant purposes and on or about October 8, 1920, the tenant assigned the leases to Wilder Brothers and gave them a bill of sale of the personal property contained in the premises.

488   B'WAY-94TH ST. REALTY CO., INC., *v.* C. & L. L. CO., INC.

Appellate Term, First Department, November, 1922.      [Vol. 119

The assignment agreement was complete on its face and conveyed to Wilder Brothers the entire estate of the tenant in said premises. The consideration paid by Wilder Brothers for the assignment and bill of sale was $19,500. Prior to the making of this assignment and bill of sale the landlord had refused to give to the tenant his consent to the assignment of the lease to three different prospective purchasers. It is quite evident from the testimony that both parties, at the time, had the mistaken idea that it was necessary to obtain the consent of the landlord to such assignment. Notwithstanding such former refusals on the part of the landlord the tenant made the assignment to Wilder Brothers who had all the qualifications required of an assignee as evidently found by the jury in rendering a verdict in favor of the tenant. The assignee went into actual possession immediately and tendered the two months' rent as security to the landlord. The landlord refused to accept the security as well as the rent when tendered, and notified Wilder Brothers that it would use every means possible to deprive them of the possession of said premises. Nevertheless, Wilder Brothers continued in possession from October 8, 1920, until April 7, 1921, and the possession, use and occupation of the demised premises was not interfered with during said period.

It further appears that at the time the tenant assigned the lease to Wilder Brothers and gave the bill of sale above mentioned, the said tenant entered into an oral agreement with Wilder Brothers under the terms of which Wilder Brothers were at liberty to demand and receive back the amount of the purchase price, at any time, if their tenancy was disturbed, or if the landlord would not accept them as assignees. The landlord, according to the testimony of the tenant, refused to consider Wilder Brothers as the assignee and threatened interference with the quiet possession of the premises, and by reason of said threats the tenant claims it was damaged to the extent and value of its bargain with Wilder Brothers, who, under the oral agreement, demanded back and received their purchase money and reassigned the lease to the tenant.

The tenant claims that this assignment was not an absolute assignment but by reason of the oral agreement it was a conditional transfer, and that the situation must be considered the same as a case where a third party interferes with the making of a contract or induces one of the parties not to enter into the agreement and thus spoils the bargain of the other party through fraud or other wrongful means. But the difficulty with that contention is that the landlord did not see Wilder Brothers or have any communication with them until *after* the assignment was made. No bargain was spoiled in this case; on the contrary, the bargain was actually com-

pleted and contractual relations were established between the parties.  The landlord cannot be held accountable for the kind of contract his tenant may choose to make with another person. This is not a case where threats and intimidations are directed against a prospective purchaser who is driven away and refuses to enter into a contract.  *Burkett* v. *Griffith*, 90 Cal. 532; *Felt* v. *Germania Life Insurance Co.*, 149 App. Div. 14; *Kendall* v. *Stone*, 5 N. Y. 14.  If the landlord had induced a breach by the assignee of the lease through some wrongdoing amounting to a tort whereby it deprived the tenant, assignor, of the benefit of the assignment, such interference would have been actionable if the landlord had used fraudulent or other wrongful means to induce the assignee to break the contract.  *DeJong* v. *Behrman Co.*, 148 App. Div. 37, 39.  But there is no evidence in this case of any fraud or deceit practiced by the landlord.  The sole complaint made against the landlord is that it interfered with the quiet possession of the premises by its threats to cut off the light, heat and water.  But those threats were never carried out, and so long as Wilder Brothers either paid or tendered the rent for the premises they had a right under the leases to remain in possession until the end of the term.

Our conclusion is that the tenant has no cause of action against the landlord, and the motion of the landlord's counsel at the end of the whole case for a final order in favor of the landlord for the amount of the rent unpaid and the water charges should have been granted, as well as the motion for the dismissal of the counterclaim.

Judgment reversed, with thirty dollars costs, and a final order is directed to be entered in favor of the landlord awarding it the possession of the premises described in the petition, and the defendant's counterclaim is dismissed upon the merits, with costs.

BIJUR and McCOOK, JJ., concur.

Judgment reversed.